DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment that reversed the Ohio Board of Emergency Medical Services' (Board) decision to permanently revoke Billy J. Cantrell's certificate to practice as an Emergency Medical Technician-Paramedic in the State of Ohio.
 {¶ 2} The Board, the appellant herein, raises the following assignments of error for review and determination:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY FINDING THAT THE CRIME OF SEXUAL IMPOSITION IS NOT ONE INVOLVING MORAL TURPITUDE."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT REVIEWED THE FACTS AND CIRCUMSTANCES UNDERLYING APPELLEE'S CONVICTION FOR SEXUAL IMPOSITION AND USED THAT REVIEW AS A BASIS FOR REVERSING THE ADJUDICATION."
 {¶ 3} In 1998, appellee was employed at the Scioto County jail. During that time, a woman with whom appellee had previously been romantically involved was jailed there for driving while under the influence. While the woman was in custody at the jail, she and appellee engaged in allegedly consensual sex. Appellee subsequently pled guilty to sexual imposition, a third-degree misdemeanor.
 {¶ 4} On May 26, 2000, appellee applied to have his EMT certification re-instated. On the application form he indicated that he had not been convicted of a crime involving moral turpitude.[1] On August 30, 2004, appellee applied for his EMT certification renewal. In it, he indicated that he had been convicted of a felony or misdemeanor. The EMS Division subsequently investigated appellee and on September 24, 2004, the Board notified appellee that it proposed to refuse to renew his EMT certification. Appellee requested a hearing.
 {¶ 5} The hearing officer concluded that appellee was convicted of a misdemeanor involving moral turpitude. She determined that the state showed that appellee's sexual imposition offense violated the public trust in that appellee committed the crime while on duty as a law enforcement officer and in that it involved a sexual incident. The hearing officer further found the following mitigating evidence: (1) the crime occurred several years ago; (2) appellee admitted his crime; and (3) appellee lost his job with the Sheriff's Office. The hearing examiner recommended a ninety-day suspension.
 {¶ 6} On August 17, 2005, the board rejected the hearing examiner's recommendation and, instead, permanently revoked appellee's EMT certificate. The board "considered [appellee] in a position of authority, and [he] breached the trust of the public. Law enforcement is a position of trust, much like that of an EMT. It is the Board's responsibility to the public to ensure that all licensed EMTs meet the level of trust instilled upon them by the Board. Therefore, the Board believes that these factors, and the evidence presented at the hearing, far out weigh [sic] any mitigating evidence presented by [appellee]."
 {¶ 7} Appellee appealed the board's decision to the common pleas court and, on May 17, 2006, the court reversed the board's decision to revoke appellee's license. The court determined that as a matter of law, appellee's sexual imposition conviction did not constitute conduct involving moral turpitude. This appeal followed.
 {¶ 8} Appellant's two assignments of error both address the propriety of the trial court's decision to reverse the board's decision to permanently revoke appellee's EMT certificate. Therefore, we address them together.
 {¶ 9} In an R.C. 119.12 administrative appeal, a common pleas court must affirm the agency's decision if it is supported by "reliable, probative, and substantial evidence and is in accordance with law." SeePons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748; In re Williams (1991), 60 Ohio St.3d 85, 86, 573 N.E.2d 638. Generally, a common pleas court must defer to the agency's resolution of factual questions. The court need not, however, accept improperly drawn inferences from the evidence or accept evidence which is neither reliable nor probative. University of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110, 407 N.E.2d 1265; Our Place, Inc. v. Ohio LiquorControl Comm. (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303. Furthermore, a trial court may not try the issues de novo or substitute its judgment for the administrative agency. See Smith v. Sushka (1995),103 Ohio App.3d 465, 470, 659 N.E.2d 875; Cook v. Maxwell (1989),57 Ohio App.3d 131, 135, 567 N.E.2d 292; Steinbacher v. Louis (1987),36 Ohio App.3d 68, 71, 520 N.E.2d 1381. A common pleas court may, however, decide purely legal questions de novo. See Ohio Historical Soc. v. StateEmp. Relations Bd. (1993), 66 Ohio St.3d 466, 470-471, 613 N.E.2d 591;Joudah v. Ohio Dept. of Human Serv. (1994), 94 Ohio App.3d 614, 616-617,641 N.E.2d 288.
 {¶ 10} An appellate court's review of an order from an administrative agency is more limited than that of the trial court. See Lorain City Bd.of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261,533 N.E.2d 264. It is incumbent on a trial court to examine the evidence. See Pons, 66 Ohio St.3d at 621. Such is not the charge of an appellate court. Id. An appellate court must determine if the trial court has abused its discretion.[2] Id. Thus, absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See id. An abuse of discretion constitutes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. See, e.g., Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v. Courtyard by MarriottL.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242.
 {¶ 11} Further, an appellate court must not substitute its judgment for that of an administrative agency or a trial court. Pons,66 Ohio St.3d at 621. "The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. * * * * With respect to purely legal questions, however, the court is to exercise independent judgment." VFW Post 8586 v. Ohio LiquorControl Comm. (1998), 83 Ohio St.3d 79, 81-82, 697 N.E.2d 655; see, also, Nye v. Ohio Bd. of Examiners of Architects, 165 Ohio App.3d 502,2006-Ohio-948, 847 N.E.2d 46, at ¶ 11 (stating that appellate court has plenary review of legal questions).
 {¶ 12} The crux of the issue in the case at bar is whether appellee's sexual imposition conviction involves "moral turpitude." This is a legal question that we review de novo and without deference to the trial court. See Bivins v. Ohio State Bd. of Emergency Med. Servs.,165 Ohio App.3d 390, 2005-Ohio-5999, 846 N.E.2d 881, at ¶ 8; see, also,Disciplinary Counsel v. Hunter 106 Ohio St.3d 418, 2005-Ohio-5411,835 N.E.2d 707, at ¶ 24 ("Where moral turpitude is disputed, an independent review of the circumstances underlying the illegal conduct is necessary to determine whether the conduct manifests the requisite lack of social conscience and depravity beyond any established criminal intent.").
 {¶ 13} The Ohio Administrative Code defines "moral turpitude" as "the act of baseness, vileness, or the depravity in private and social duties which one owes to society, contrary to accepted and customary rule of right and duty between human beings." Ohio Adm. Code 4765:1-01(R). A "base" act means one that is "morally low, contemptible." Webster's Encyclopedic Dictionary (1989), at 80. "Vile" means "morally hateful," id. at 1098, and "depravity" means "moral corruption, perversion, wickedness." Id. at 258.
 {¶ 14} "Moral turpitude" also means an "'[a]ct or behavior that gravely violates moral sentiment or accepted standards of [the] community and is a morally culpable quality held to be present in some criminal offenses as distinguished from others.'" Davidson, D.P.M. v.State Med. Bd. of Ohio (May 7, 1998), Franklin App. No. 97APE08-1036, quoting Black's Law Dictionary (6 Ed.1991) 698; see, also,Bivins, at ¶ 9. "[A]lthough any misdemeanor offense, by definition, involves the breach of a social duty that man owes to his fellow man, or to society in general, the issue is whether the breach of duty involves baseness, vileness, or depravity." Holycross v. State Bd. of EmergencyMed. Serv., 163 Ohio App.3d 213, 2005-Ohio-4598, 837 N.E.2d 423, at ¶ 10. "[W]hen * * * a misdemeanor conviction cannot be determined as a matter of law to involve or not to involve moral turpitude, it is permissible to consider the circumstances underlying the offense for which an EMT was convicted." Bivins, at ¶ 11.
 {¶ 15} In Bivins, the trial court affirmed the Ohio State Board of Emergency Medical Services' decision to revoke Bivins' EMT certificate.Bivins was convicted of an amended charge of assault, a first degree misdemeanor. As a result, the board sought to revoke his certificate.
 {¶ 16} On appeal, the appellate court looked behind the name of the crime (assault) and, instead, looked at the underlying circumstances of the crime to determine whether it involved moral turpitude. The court noted that the assault charge stemmed from two counts involving sexual activity with a fourteen year old girl. The court determined that this offense involved moral turpitude.
 {¶ 17} In Holycross, an EMT appealed the board's decision to revoke his certificate. Holycross was convicted of telephone harassment, attempted telecommunications harassment, and criminal trespass. The court noted that: (1) the crimes arose out of Holycross's infatuation with his co-worker's fifteen year old daughter; (2) there was no allegation that Holycross ever touched the daughter in a sexual manner; and (3) the evidence did not suggest that the daughter found Holycross's conduct highly offensive. The court found "no reasonable basis * * * for a finding that the misdemeanor offenses of which Holycross was convicted involve moral turpitude." Id. at ¶ 75.
 {¶ 18} In the case at bar, we believe that appellee's sexual imposition offense involved[3] moral turpitude. Appellee committed the act while on duty as a jailer at the Sheriff's Office. The victim was an inmate. Appellee's abuse of his position in this manner violated the public trust. Unlike Holycross who did not commit the offense while in his professional duty, appellee committed the offense while in his professional duty as a law enforcement officer. Thus, we agree with the hearing officer and appellant that appellee's conduct in having sexual intercourse with an inmate while employed as the jailer constitutes moral turpitude.
 {¶ 19} While appellee argues that his allegedly consensual conduct with the woman may be likened to an innocent tryst, the young woman inmate may, however, have been pressured to engage in the sexual act because of appellee's status as her jailer. Appellee owed the woman and the general public a duty to act in a professional manner and to protect those under his command, not to take advantage of his position for personal satisfaction. Fulfilling one's sexual desires over a professional duty is a morally low, base act sufficient to constitute moral turpitude.
 {¶ 20} We note that appellee's main concern appears to be the penalty the board imposed upon him. The hearing examiner recommended a ninety-day suspension, while the board ultimately decided to permanently revoke appellee's certificate. Although the penalty may seem harsh for a one-time violation that occurred several years ago, we recognize that the board retains ultimate authority to set the punishment for violations of its rules and its decision regarding the punishment is beyond review. See Henry's Café, Inc. v. Bd. of Liquor Control (1959),170 Ohio St. 233, 163 N.E.2d 678, paragraph three of the syllabus (stating that the common pleas court "has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion"). We further observe that the Tenth District has suggested that the Ohio Supreme Court revisit this issue. See 18121 Euclid, Inc. v. Liquor Control Comm., Franklin App. No. 05AP-354, 2005-Ohio-7025; Lindner v. Liquor Control Comm. (May 31, 2001), Franklin App. No. 00AP-1430.
 {¶ 21} Consequently, we agree with appellant that the trial court erred by finding that appellee's sexual imposition offense did not constitute an offense involving moral turpitude. Thus, we sustain appellant's first assignment of error. Consequently, our disposition of appellant's first assignment of error renders its second assignment of error moot and we will not address it. See App.R. 12(A)(1)(c).
 {¶ 22} Accordingly, based upon the foregoing reasons we hereby reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and the cause remanded for further proceedings. Appellant shall recover of appellee the costs herein taxed. The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution. A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Appellee asserts that the trial court informed him that this crime does not involve moral turpitude.
[2] In Brown v. Ohio Bur. of Emp. Services (1994), 70 Ohio St.3d 1, 3,633 N.E.2d 1230, the Ohio Supreme Court deviated from prior case law by phrasing the standard of review facing the court of appeals as whether the trial court's decision is supported by reliable, probative and substantial evidence. This court previously recognized the anomaly ofBrown and noted that it is unclear the extent to which the Supreme Court has sub silento overruled its previous decisions holding appellate courts to "an abuse of discretion" standard. See, e.g., Cook v. OhioDept. of Job and Family Services, Jackson App. No. 02CA22,2003-Ohio-3479; Baughman v. Dept. of Publ. Safety Motor VehicleSalvage (1997), 118 Ohio App.3d 564, 570-571, 693 N.E.2d 851, at fn. 4;Vogelsong v. Ohio State Bd. of Pharmacy (Dec. 27, 1996), Scioto App. No. 96CA2448; Wells v. Monroe Cty. Bd. of Commrs. (Jun. 28, 1995), Scioto App. No. 94CA2273. We are aware that a number of other Ohio appellate courts have ignored Brown and continue to apply the abuse of discretion standard in reviewing a trial court's judgment. See, e.g., Allgood v.Akron (2000), 136 Ohio App.3d 529, 532, 737 N.E.2d 111; Steinfels v.Ohio Dept. Of Commerce, Div. Of Securities (1998), 129 Ohio App.3d 800,803, 719 N.E.2d 76; Quinlan v. Ohio Dept. Of Commerce, Div. Of ConsumerFinance (1996), 112 Ohio App.3d 113, 117, 678 N.E.2d 225; Sohi v. OhioState Dental Bd. (Oct. 23, 1998), Hamilton App. No. C-970739;Goldman v. State Med. Bd. of Ohio (Oct. 20, 1998), Franklin App. No. 98AP-238; Seith v. Ohio Real Estate (Aug. 6, 1998), Cuyahoga App. Nos. 73181 73182. Until further clarification from the Ohio Supreme Court on this matter, we continue to apply the abuse of discretion standard in reviewing a trial court's decision in an administrative appeal.
[3] R.C. 2907.06(A)(2) sets forth the offense of sexual imposition to which appellee pled guilty:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 * * * *
 (2) The offender knows that the other person's or one of the other person's ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.